**Arthur MITCHELL, Petitioner-Appellant,**

v.

**Perry JOHNSON, Warden, Respondent-Appellee.**

**No. 72-1481.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 8, 1973.

Decided Dec. 6, 1973.

David R. Hood, Detroit, Mich. (Court appointed), for petitioner-appellant.

Stewart H. Freeman, Asst. Sol. Gen., for respondent-appellee; Frank J. Kelley, Atty. Gen., Robert A. Derengoski, Sol. Gen., Lansing, Mich., on brief.

Before EDWARDS and McCREE, Circuit Judges, and YOUNG,* District Judge.

McCREE, Circuit Judge.

This appeal requires us to decide whether a state may, agreeably to the Constitution, refuse to appoint counsel to assist an indigent defendant in the preparation of an application for discretionary direct appeal to the state supreme court when nonindigent defendants customarily employ counsel for this purpose. We hold that it may not.

Appellant was convicted of unarmed robbery in a Michigan state court and was sentenced to a term of eight to fifteen years in prison. His conviction was affirmed on an appeal as of right to the Michigan Court of Appeals. Because appellant was indigent, he had the assistance of counsel at trial and in the Court of Appeals. However, his request for counsel to prepare an application for leave to appeal to the Michigan Supreme Court was not granted. Accordingly, the Michigan Supreme Court had only his pro se application to consider and declined to exercise discretionary review. Thereafter, he petitioned for a writ of

* The Honorable Don J. Young, United States District Judge for the Northern District of Ohio, sitting by designation.

habeas corpus in the United States District Court, and claimed, as one ground for relief, that the denial of an attorney to aid in his application for discretionary review violated his Fourteenth Amendment rights to equal protection and to due process of law. Appellant appeals from the district court's order denying the petition.

This is a case of first impression in our circuit and we are faced with conflicting guidance from our brethren in other circuits that have considered the issue presented here. *Compare* Moffitt v. Ross, 483 F.2d 650 (4th Cir. 1973), with United States ex rel. Pennington v. Pate, 409 F.2d 757 (7th Cir. 1969).

In Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1955), the United States Supreme Court considered a state requirement that a defendant seeking review provide the appellate court with a bill of exceptions or a report of trial proceedings certified by the trial judge. Because under this procedure access to a transcript of the trial proceedings was for practical purposes a prerequisite to appellate review, the Court held that the due process and equal protection clauses of the Fourteenth Amendment required that indigent criminal defendants be provided a free transcript. The Court declared:

> . . . [T]o deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside. . . . *There can be no equal justice where the kind of trial a man gets depends on the amount of money he has.* Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts. 351 U.S. at 19, 76 S.Ct. at 590. (Emphasis added).

Although in subsequent cases the *Griffin* principle has not always been stated in such sweeping language, *see* Eskridge v. Washington, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958), Draper v. Washington, 372 U.S. 487, 83

S.Ct. 774, 9 L.Ed.2d 899 (1963), nevertheless, the principle has been applied in criminal proceedings beyond the first appellate review. Thus, in Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L. Ed.2d 1209 (1959), the Court held that a state could not constitutionally require an indigent to pay a filing fee as a condition to filing a motion for leave to appeal to the supreme court of the state:

> . . . [O]nce the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty. . . . This principle is no less applicable where the State has afforded an indigent defendant access to the first phase of its appellate procedure but has effectively foreclosed access to the second phase of that procedure solely because of his indigency. 360 U.S. at 257, 79 S.Ct. at 1168.

*See also* Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966); Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L. Ed.2d 601 (1969).

Although Mitchell was not "effectively foreclosed" from access to the second stage of the Michigan appellate procedure in the same manner as was Burns, we think it beyond doubt that an indigent preparing his own application for discretionary review is almost as seriously disadvantaged in comparison to a litigant who can afford the special expertise of an attorney. But whatever the force of *Griffin* and *Burns* alone, these cases now must be read in conjunction with Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). In *Douglas*, defendants had appealed as a matter of right to a California intermediate court of appeals and had requested the assistance of counsel because of indigency. Counsel was refused in accordance with a state rule of criminal procedure that required the state appellate courts, upon re-

quest for counsel by an indigent, to make an independent examination of the record and determine whether appointed counsel would be of advantage to the defendant or to the appellate court and, subsequently, the California Supreme Court denied discretionary review. The United States Supreme Court vacated the judgment and remanded the case, holding that appointed counsel was constitutionally required for the "one and only appeal an indigent has as of right." 372 U.S. at 357, 83 S.Ct. at 816. The Court expressly left open the question presented here, whether counsel must be provided for an indigent seeking discretionary review in a state supreme court. 372 U.S. at 356, 83 S.Ct. 814.

In addressing this question, we focus our attention on the same factors considered by the Court in *Douglas*, which reasoned:

. . . The present case, where counsel was denied petitioners on appeal, shows that the discrimination is not between "possibly good and obviously bad cases," but between cases where the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal. 372 U.S. at 357–358, 83 S.Ct. at 817.

The disadvantage to the indigent in this case is no less substantial. The assistance of a skilled advocate who understands the intricate and subtle factors that might persuade a court to exercise its discretionary review and who possesses the power to communicate them succinctly and cogently appears to be as important here as is the assistance of counsel at trial or on a first appeal. Defendants without education in the law or experience in its practice cannot be expected, unaided, to state accurately and clearly whatever claims for justice their cases might possess. Although empirical data is lacking, we think it not unreasonable to postulate that discretionary review will be denied indigents in a significant number of cases where wealthier appellants, with the assistance of counsel, would have obtained review and possibly a reversal of the conviction on the merits. And, of course, when the prosecution seeks discretionary review, as is permitted in appropriate circumstances, the state's application is always the product of legal counsel. Where liberty is at stake, we consider the substantial disadvantage experienced by the unassisted indigent to be an invidious discrimination and a denial of fundamental fairness required by the equal protection and the due process clauses of the Fourteenth Amendment. In reaching this conclusion, we do no more than adhere to principles firmly established in our law. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1955). *See also* Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

We do not find persuasive the government's argument that because appellant has already had one appeal with the aid of counsel the Constitution requires no more. Burns v. Ohio, *supra*, establishes that due process and equal protection guarantees may be violated when an indigent criminal defendant is disadvantaged at any stage of the appellate process. The rights of an unjustly convicted

defendant should not be practically foreclosed merely because error has survived prior appellate review, if other defendants, similarly situated except for greater affluence, are afforded a better chance for another appeal. We conclude that the considerations of equality and fairness found controlling by the Supreme Court in *Douglas* apply with equal force in this case.

And we do not believe that practical considerations and institutional limitations compel a different result. In Argersinger v. Hamlin, 407 U.S. 25, 92 S. Ct. 2006, 32 L.Ed.2d 530 (1972), the Supreme Court held that "no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. at 37, 92 S.Ct. at 2012. In his concurring opinion, Chief Justice Burger stated: "The holding of the Court today may well add large burdens on a profession already overtaxed, but the dynamics of the profession have a way of rising to the burdens placed on it." 407 U.S. at 44, 92 S.Ct. at 2015. The burden imposed upon states by the obligation to provide indigent appellants with counsel on application to their supreme courts for discretionary review does not appear as substantial as the burden imposed by *Argersinger*. Indeed, the Attorney General of Michigan advises us that the State Appellate Defender is currently seeking leave to appeal to the Supreme Court of Michigan in many cases, and that if this trend continues, "the issue at bar may in the foreseeable future no longer be a problem." Brief for the Appellee at 7.

In Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), where it held that an indigent defendant must be afforded counsel in a post-trial proceeding for revocation of probation and the imposition of deferred sentencing, the Supreme Court observed: "We assume that counsel appointed for the purpose of the trial or guilty plea would not be unduly burdened by being requested to follow through at the deferred sentencing stage of the proceeding." 389 U.S. at 137, 88 S.Ct. at 258. Similarly, counsel appointed on appeal as of right should not be unduly burdened if required to "follow through" in the preparation of an application for discretionary appeal to the state supreme court. A similar requirement is already almost universally imposed by the federal courts of appeals in plans adopted under the Criminal Justice Act of 1964, 18 U. S.C. § 3006A. They require appointed attorneys to prepare and file petitions for certiorari in the United States Supreme Court, upon defendant's request after an adverse decision in the court of appeals.[1]

1. For example, the Sixth Circuit's plan to implement the Criminal Justice Act of 1964 provides in relevant part:

    If, after an adverse decision by the Court of Appeals, a review by the Supreme Court of the United States is to be sought, the appointed attorney shall, if requested to do so after discussion with the person for whom the attorney is appointed, prepare and file a petition for certiorari and other necessary and appropriate documents in connection therewith.

    The plan of the First Circuit states:

    Except when relieved by the court, counsel's appointment shall not terminate until, if defendant loses his appeal, he informs defendant of that fact and of his right to petition for certiorari and the time period, and has prepared and filed the petition if defendant requests it. If the defendant does not wish to apply for certiorari or does not respond to the notification, counsel shall so inform the court by letter.

    The Fifth Circuit in its plan requires:

    After any adverse decision on the appeal appointed counsel shall notify the party represented in writing of his right to seek review of such decision by the filing of a petition for writ of certiorari with the Supreme Court of the United States. If after consultation (by correspondence, or otherwise) with the party represented it appears advisable to seek such review, the appointed attorney shall, if requested to do so in writing, prepare and file such petition for writ of certiorari, and shall thereafter continue to represent the party unless or until relieved by the Supreme Court.

    Our research indicates that similar duties, with minor variations, are imposed on appointed counsel under the plans adopted by

The temple of criminal justice does not have three stories for the affluent and only two for the indigent. We conclude that the constitutional principles enunciated in *Griffin, Burns* and *Douglas* require appointment of counsel to assist indigent appellants in applications to the Michigan Supreme Court for discretionary review. Our decision is supported by the spirit, if not by the express command, of the Sixth Amendment right to assistance of counsel, applicable to the states through the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963).[2]

We decide only the question presented by this appeal and do not reach the question whether counsel must be provided an indigent in the state supreme court if leave to appeal is granted or whether appointed counsel must be furnished to assist in petitioning the United States Supreme Court for a writ of certiorari. *Cf.* note 1, *supra*.

The judgment of the district court is vacated and the case is remanded for proceedings not inconsistent with this opinion.

<hr>

every numbered court of appeals. The District of Columbia Circuit, by rule of court, provides that such assistance be given defendants if in the appointed attorney's judgment, the case warrants a petition for certiorari.

2. The Sixth Amendment to the Constitution of the United States provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and *to have the Assistance of Counsel for his defence.*

This right has been held applicable to the states not only at trial, *Gideon, supra, Argersinger, supra,* but at other critical stages

<hr>

of the criminal proceedings. *E. g.,* United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (at post-indictment lineup before trial) ; Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), (at post-trial proceeding for revocation of probation coupled with the imposition of deferred sentencing) ; Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (at preliminary hearing). *Cf.* Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (Fifth Amendment privilege during pretrial custodial interrogation). *But see* Kirby v. State of Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (pretrial lineup prior to indictment or other formal charges was not a part of the "criminal prosecution").

Because we dispose of the case on grounds of equality and fairness under *Douglas* and *Griffin,* we do not find it necessary to decide today whether this appellate stage is a critical part of the "criminal prosecution" within the meaning of the Sixth Amendment.